623 A.2d 234

BARBARA A. WILLIAMS, PLAINTIFF–APPELLANT, v. BELL TELEPHONE LABORATORIES INCORPORATED, DEFENDANT–RESPONDENT.

Argued March 2, 1991—Decided May 3, 1993.

110 

*Linda B. Kenney* argued the cause for appellant (*Ansell, Zaro, Bennett & Kenney,* attorneys).

*Thomas L. Morrissey* argued the cause for respondent (*Carpenter, Bennett & Morrissey, Silvio J. DeCarli,* on the brief).

PER CURIAM.

Plaintiff instituted this action by filing a Complaint setting forth various causes of action arising out of defendant's termination of her employment. The jury returned a verdict in plaintiff's favor on her charge that defendant's employees had given defamatory statements to the Essex County Prosecutor's Office. The trial court denied defendant's post-verdict motion seeking judgment in its favor on the basis of the statute of limitations applicable to defamation actions, *N.J.S.A.* 2A:14–3. Although defendant had pleaded the defense of the statute of limitations in its Answer, the trial court held that because defendant had made no reference to that statute at any point in the proceedings, which included numerous pretrial and trial motions, it had waived the statute-of-limitations defense.

The Appellate Division, in an unreported opinion, reversed and entered judgment for defendant, holding that the statute of limitations had not been waived and that plaintiff's action was time-barred. The court observed that the trial court's failure to have applied the limitations bar was "particularly inappropriate" because the judgment in plaintiff's favor "[could not] be sustained in any event," inasmuch as the court had given the jury an incorrect charge on the burden of proof required of plaintiff to establish abuse of a conditional privilege. For the latter proposition the Appellate Division relied on *Erickson v. Marsh & McLennan Co.*, 117 *N.J.* 539, 569 *A.*2d 793 (1990), decided after the trial of this case.

We granted plaintiff's petition for certification, 127 *N.J.* 554, 606 *A.*2d 367 (1991), and now affirm in part, reverse in part, and remand for a new trial.

I

Plaintiff, Barbara Williams, worked for defendant, Bell Telephone Laboratories, Inc. (Bell), for twelve years, from 1972 until her dismissal in October 1984. In 1983, Bell appointed Williams as campus project manager of the company's Aid to

Black Colleges (ABC) program. After the company received an anonymous letter claiming that Williams had embezzled or otherwise misused corporate funds, Bell conducted an audit of the ABC program. The company claimed that the audit had revealed improprieties by Williams and her immediate supervisor, and therefore it fired both employees on October 10, 1984.

On November 30, 1984, the company's auditor and several other Bell representatives met with an assistant in the office of the Essex County Prosecutor to disclose the results of the audit. Bell claims that none of its representatives explicitly accused Williams of violating the law. Although Bell informed the prosecutor in January 1985 that it was no longer pursuing the matter, the prosecutor decided to continue his investigation. By letter dated June 10, 1985, the prosecutor informed Williams that she was the target of a criminal investigation, but for reasons not disclosed in the record the prosecutor's office later dropped the investigation.

In January 1986 Williams filed suit against Bell, and in March 1986 submitted an Amended Complaint containing fourteen causes of action, characterized in her petition for certification as follows:

Breach of an express contract, Count One; breach of an implied contract, Count Two; breach of an implied covenant of good faith and fair dealing, Count Three; breach of a duty to investigate [alleged employee wrongdoing] prior to discharge, Count Four; handicap discrimination, Count Five; defamation to the State Department of Unemployment and Disability Insurance, Count Six; intentional reporting of a criminal activity to the State Division of Unemployment, Count Seven; reckless disregard for the truth of such statement to the Division of Unemployment, Count Eight; negligent making or publishing of statement that was not true to the Essex County Prosecutor's Office, Count Nine; intentionally making a statement alleging criminal activity to the Essex County Prosecutor's Office, Count Ten; recklessly making a false statement to the Essex County Prosecutor's Office of criminal conduct, Count Eleven; wrongful termination and violation of public policy, Count Twelve; intentional infliction of emotional distress, Count Thirteen; and negligent infliction of emotional distress, Count Fourteen.

Bell contended in its Answer that the one-year statute of limitations, *N.J.S.A.* 2A:14–3, barred Williams's claims sounding in defamation.

After the parties had completed discovery, Bell moved to dismiss all claims except those asserted under the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42. The trial court granted the motion in part, leaving intact only those counts asserting racial discrimination, handicap discrimination (count five), defamation occurring only during the meeting with the prosecutor (counts nine, ten, and eleven), and negligent infliction of emotional distress (count fourteen).

The ensuing trial lasted for eleven days. At the close of Williams's case, Bell moved to dismiss all remaining claims— the racial-discrimination claim and those embodied in counts five, nine, ten, eleven, and fourteen. The court dismissed the racial-discrimination and negligent-infliction-of-emotional-distress counts, but put defendant to its proofs on the handicap-discrimination count and on the claims that alleged defamation during the meeting with the prosecutor. At the close of all the evidence, Bell renewed its application to dismiss the handicap-discrimination and defamation claims. The court again denied the motion in respect of the defamation claims and reserved decision on the handicap-discrimination claim. (After the jury returned its verdict in plaintiff's favor on the defamation counts, the court entered judgment for Bell on the handicap-discrimination count.)

At no time after filing its Answer did Bell assert its statute-of-limitations defense, either by way of pretrial motion or motion during the course of trial. The trial court submitted to the jury only the ninth, tenth, and eleventh counts of the Amended Complaint, which alleged that Bell had negligently, recklessly, or intentionally defamed Williams in the company's November 1984 meeting with the prosecutor. In respect of those counts Bell asserted, and the court agreed, that the company enjoyed a qualified privilege to present the results of its audit to the prosecutor's office. Bell requested the court to instruct the jury regarding Williams's burden of proof as follows:

you must * * * find for Bell Labs *unless* you conclude that plaintiff has proved, by a preponderance of the credible evidence, that at the time Bell Labs made the statements in question, it either knew they were false or made them with reckless disregard of whether they were true or false.

Substantially in accordance with that request the court charged that plaintiff had to prove by a preponderance of the evidence that defendant had abused its conditional privilege.

The jury rendered a verdict of $670,000 for Williams ($170,000 compensatory and $500,000 punitive damages). According to its responses to special interrogatories, the jury unanimously concluded that Bell did not know its statement to the prosecutor was false; however, by a vote of seven to one, the jurors found Bell to have abused the conditional privilege because Bell "had acted in reckless disregard of [the statement's] falsity."

Six days after the verdict but prior to the entry of judgment, Bell moved to supplement its argument on the motion for judgment at the close of the case. It contended that because a determination of when the defamation-based claims had accrued could be made only on the basis of the evidence adduced at trial, the court should allow Bell to supplement its argument with a statute-of-limitations defense.

In denying that motion, the trial court agreed that Williams's defamation-based causes of action had accrued on November 30, 1984, the date Bell's representatives went to the Prosecutor's office. *See Barres v. Holt, Rinehart & Winston, Inc.*, 131 *N.J.Super.* 371, 330 *A.*2d 38 (Law Div.1974), *aff'd*, 141 *N.J.Super.* 563, 359 *A.*2d 501 (App.Div.1976), *aff'd*, 74 *N.J.* 461, 378 *A.*2d 1148 (1977). However, the court found that under *Fees v. Trow*, 105 *N.J.* 330, 521 *A.*2d 824 (1987), Bell had waived the statute-of-limitations defense. In ruling on defendant's motion the court noted that defendant had not adverted to the statute in its motion for partial summary judgment nor in its pretrial motion for judgment at the end of plaintiff's case. The court also observed in passing that a discovery rule should toll the statute in defamation cases until the plaintiff knows of, or reasonably should have discovered, the publication.

Bell appealed from the judgment against it, and Williams cross-appealed from the trial court's orders dismissing her causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, race discrimination, and handicap discrimination. Bell argued to the Appellate Division, as it had to the trial court, that the applicability of the statute—specifically, the date of accrual—could have been determined only after the presentation of plaintiff's proofs, because discovery had presented a question regarding whether possible republication (during conversations between Bell and the prosecutor after the original meeting) had affected accrual of the cause of action.

The Appellate Division rejected the trial court's conclusion that defendant had waived its statute-of-limitations defense. The court conceded that Bell's failure to have raised the issue at the conclusion of plaintiff's case (because counsel "just did not remember") contradicted the company's contention that not until after submission of plaintiff's proofs could the time of "accrual" have been ascertained. However, the court concluded that notwithstanding the fact that the statutory bar had not been effectively pursued at trial, the defense could not fairly be regarded as having been waived. In support of that conclusion, the court observed that none of the factors regarding waiver of the statute-of-limitations defense discussed in *Fees, supra,* 105 *N.J.* 330, 521 *A.*2d 824—failure to include the defense in the Answer, to raise it prior to entry of judgment, or to discuss it in the papers—was present in this case. The court determined that "counsel's conceded oversight in failing to address the question at the close of plaintiff's proofs [should not] deprive Bell of a judgment to which it is otherwise entitled." It added that New Jersey courts "have consistently held that the trial court should consider and determine on their merits post-trial motions addressed to the proofs, particularly where the showing is that the proofs are insufficient as a matter of law to support the judgment."

Thus, melding its analysis of the waiver issue with its examination of Bell's contention that the evidence was inadequate to support the verdict, the court implied that because *Erickson, supra,* 117 *N.J.* 539, 569 *A.*2d 793, had retroactively rendered erroneous the trial court's instructions, Williams would not have been entitled to a judgment in any event. The Appellate Division added, in *dicta,* that even if it were to approve the trial court's finding of waiver, the prejudicial effect of the improper charge would have required a new trial under *Rule* 2:10–2. Thus, the court declared that "a refusal to now entertain the statute-of-limitations defense would not contribute to a fair and orderly disposition of the case but would be solely, and gratuitously, punitive."

In addition, the Appellate Division rejected Williams's discovery-rule contention. It concluded that unlike statutes that define a limitation period in terms of accrual of the cause of action and thus permit the "discovery rule" to postpone accrual, the defamation statute of limitations, *N.J.S.A.* 2A:14–3, mandates that an action for libel or slander "shall be commenced within 1 year next after the publication." Relying on our opinion in *Lawrence v. Bauer Publishing & Printing Ltd.,* 78 *N.J.* 371, 396 *A.*2d 569 (1979), the Appellate Division observed that this Court "has squarely held that the discovery rule is not available in the interpretation or application of *N.J.S.A.* 2A:14–3."

Finally, the court affirmed the trial court's dismissal of plaintiff's implied-contract claims because they antedated *Woolley v. Hoffman–LaRoche, Inc.,* 99 *N.J.* 284, 491 *A.*2d 1257, *modified,* 101 *N.J.* 10, 499 *A.*2d 515 (1985). See *Grigoletti v. Ortho Pharmaceutical Corp.,* 118 *N.J.* 89, 115–18, 570 *A.*2d 903 (1990). The court also observed that the proofs offered by Williams did not display the type of egregious misconduct or consequentially-severe distress necessary to support a suit for intentional infliction of emotional distress. See *Buckley v. Trenton Savings Fund Society,* 111 *N.J.* 355, 544 *A.*2d 857 (1988).

Although in her appeal to this Court plaintiff has accumulated some fourteen points of error, many of those points are repetitious and others of but marginal merit. We limit our discussion to the following arguments: (1) the Appellate Division erred in reversing the trial court's finding that Bell had waived the statute-of-limitations defense; (2) even if Bell did not waive that defense, when publication is to an undisclosed recipient of the defamatory material, a defamation action cannot "accrue" until publication to a disclosed recipient or until the defamed party discovers, or should reasonably have discovered, the publication; (3) by arguing for a jury instruction that plaintiff had to establish Bell's abuse of a qualified privilege by a preponderance of the evidence, Bell waived its right to assert that Williams had to overcome that privilege by clear and convincing evidence, as this Court declared in *Erickson, supra,* 117 *N.J.* at 565–66, 569 *A.*2d 793.

## II

### –A–

We first examine Williams's contention that the Appellate Division erred in reversing the trial court's holding that Bell had waived the statute-of-limitations defense by its failure to assert that defense at any stage of the proceedings after pleading the statute in its Answer. In *Fees, supra,* 105 *N.J.* 330, 521 *A.*2d 824, we considered an appeal from a reversal of summary judgment that the trial court had granted based on that court's conclusion that employees of a State mental facility have a qualified privilege to report to superiors the abuse of residents. *Id.* at 340–42, 521 *A.*2d 824. In passing, we noted that although on the facts the defendant had an obvious statute-of-limitations defense, her failure to plead that defense in her Answer and to raise it in her motion for summary judgment, combined with the fact that the parties had never adverted to it "at any stage of the proceedings," amounted to a waiver. *Id.* at 335, 521 *A.*2d 824 (citing *R.* 4:6–7; *Rappeport v.*

*Flitcroft,* 90 *N.J.Super.* 578, 581, 218 *A.*2d 873 (App.Div.1966)). The trial court in this case relied on that observation in *Fees* as support for its determination that Bell had waived the statute-of-limitations defense. We agree with that conclusion.

The Appellate Division erred in seeking support for its waiver analysis in the principle that courts should accord due weight to arguments in post-trial motions addressed to the proofs. In most of the cases cited by the court below either the facts, the pleadings, or the conduct of the trial put the party against whom the statute-of-limitations defense was belatedly or haphazardly asserted on notice of its potential applicability. *See Prickett v. Allard,* 126 *N.J.Super.* 438, 440, 315 *A.*2d 51 (App. Div.) (rejecting waiver argument and holding that standing master had properly raised statute of limitations notwithstanding defaulting defendant's failure to plead it when bar "appear[ed] on the face of the complaint" in *ex parte* proceeding), *aff'd,* 66 *N.J.* 6, 326 *A.*2d 688 (1974); *Rappeport, supra,* 90 *N.J.Super.* at 580–81, 218 *A.*2d 873 (allowing defendant to raise defense in motion for judgment on the pleadings; defense not waived by failure to include it in the Answer or to raise it by motion before filing an Answer when defense appears on face of Complaint); *Feil v. Senisi,* 7 *N.J.Super.* 517, 518–19, 72 *A.*2d 348 (Law Div.1950) (allowing defendant to raise statute-of-limitations defense in motion to dismiss where it affirmatively appears on face of Complaint); *cf. In re Rinehart,* 70 *N.J.Super.* 429, 434, 175 *A.*2d 669 (App.Div.1961) (considering substantive argument not raised before judgment in Chancery Division when party had presented argument to court on motion to amend).

No unforeseen or insurmountable developments intruded in this litigation to inhibit in any way Bell's pursuit of its limitations defense. The mere one-time mention of the statute in Bell's Answer—filed in 1986—should not serve to preserve that otherwise-unasserted defense through the entire three-and-one-half-year span of the litigation, through preparation for and conduct of a protracted trial, and into a post-verdict submission,

in the course of which both parties undoubtedly expended large amounts of time, money, and energy. The statute is designed to order the business of litigants and courts. In the circumstances of this appeal—in which a failure to find waiver would only frustrate those objectives—we refuse to apply the statute to render void an otherwise legitimate claim. *See Battaglio v. Red Bank Discount Ctr., Inc.,* 65 *N.J.Super.* 185, 188, 167 *A.*2d 426 (App.Div.) ("While the object of our practice is to avoid determination of an action upon procedural errors or oversights, nevertheless fairness to one's adversary requires that a party must at some point be bound by the position he has formally taken before the trial court."), *certif. denied sub nom. Battaglio v. Druss,* 34 *N.J.* 469, 169 *A.*2d 744 (1961).

–B–

Williams also argues that we should hold that only publication to a non-confidential recipient triggers the statute of limitations and that a discovery-rule exception applies to the statute of limitations in certain defamation actions. Although our conclusion that the trial court properly found that Bell had waived the statute-of-limitations defense renders unnecessary our addressing those arguments, we nevertheless do not perceive plaintiff's contentions and the trial court's view of the matter as being entirely without merit. Our revisiting of *Lawrence, supra,* 78 *N.J.* 371, 396 *A.*2d 569, can await a case in which the question is squarely presented and the appeal turns on its answer.

–C–

█ An essential issue at trial was whether Bell had abused a qualified privilege in its communication to the prosecutor's office. The general rule is that a statement charging a criminal violation, made to a law-enforcement official, is qualifiedly privileged. *See Rainier's Dairies v. Raritan Valley Farms, Inc.,* 19 *N.J.* 552, 562, 117 *A.*2d 889 (1955); *Restatement (Second) of Torts* § 598 comment f (1976); *Prosser and Keeton on Torts* § 115 (5th ed. 1984); *see also Bainhauer v. Manoukian,*

215 *N.J.Super.* 9, 36–37, 520 *A.*2d 1154 (App.Div.1987) (describing "critical test" of existence of qualified privilege).

As this Court has explained the privilege,

> A communication "made *bona fide* upon any subject-matter in which the party communicating has an interest or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable"; the "fundamental test is the *bona fides* of the communication," and it is not privileged when the person making it has "full knowledge of its untruthfulness."
>
> [*Coleman v. Newark Morning Ledger Co.*, 29 *N.J.* 357, 375–76, 149 *A.*2d 193 (1959) (quoting *Lawless v. Muller*, 99 *N.J.L.* 9, 11, 12, 123 *A.* 104 (Sup.Ct.1923) (quoting *Harrison v. Bush*, 119 *Eng.Rep.* 509, —— (Q.B.1955))).]

The public policy underlying the qualified privilege recognizes the necessity that true information be given whenever reasonably required for " 'the protection of one's own interests, the interests of third persons or certain interests of the public.' " *Erickson, supra,* 117 *N.J.* at 563, 569 *A.*2d 793 (quoting Introductory Note, *Restatement (Second) of Torts* § 592 (1965)). Abuse of the privilege results in liability for defamation. The privilege is abused if (1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity, *see Dairy Stores, Inc. v. Sentinel Publishing Co.*, 104 *N.J.* 125, 151, 516 *A.*2d 220 (1986); (2) the publication serves a purpose contrary to the interests of the qualified privilege, *Bainhauer, supra,* 215 *N.J.Super.* at 43, 520 *A.*2d 1154; or (3) the statement is excessively published, *ibid.* "[T]he critical determination is whether, on balance, the public interest in obtaining information outweighs the individual's right to protect his or her reputation." *Dairy Stores, Inc., supra,* 104 *N.J.* at 151, 516 *A.*2d 220.

A plaintiff bears the burden of proving the defendant's abuse of a qualified privilege. In *Erickson, supra,* we held that private plaintiffs must prove an abuse of a qualified privilege by clear and convincing evidence. 117 *N.J.* at 539, 569 *A.*2d 793. In this case the trial court, at defendant's behest, gave a "preponderance of the evidence" instruction. The Ap-

pellate Division, on the strength of *Erickson,* found that charge to be erroneous. It rejected plaintiff's contention that *Erickson,* which we decided while this case was pending in the Appellate Division, should not be applied retroactively, stating that "prior case law had already established the burden of proof * * *."

This Court, following the United States Supreme Court in *Chevron Oil Co. v. Huson,* 404 *U.S.* 97, 92 *S.Ct.* 349, 30 *L.Ed.*2d 296 (1971), has adopted a three-factored test for determining retroactivity. That test requires consideration of (1) the purpose of the new rule and whether it would be furthered by retroactive application; (2) the reliance placed on the old rule by those charged with administering it; and (3) the effect that retroactive application would have on the administration of justice. *State v. Burstein,* 85 *N.J.* 394, 406, 427 *A.*2d 525 (1981); *accord Mirza v. Filmore Corp.,* 92 *N.J.* 390, 397, 456 *A.*2d 518 (1983). In civil cases the general rule is that a new ruling shall apply to all cases that have not reached final judgment. *E.g., Coons v. American Honda Motor Co.,* 94 *N.J.* 307, 318–19, 463 *A.*2d 921 (1983), *on reh'g,* 96 *N.J.* 419, 476 *A.*2d 763 (1984), *cert. denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985). In this case Williams bears the burden of persuasion that the general rule should not prevail—that is, that some sound policy dictates that *Erickson*'s burden-of-proof rule should not be applied to her case. See *Rutherford Educ. Ass'n v. Board of Educ.,* 99 *N.J.* 8, 21, 489 *A.*2d 1148 (1985). No such policy has been brought to our attention.

That the Appellate Division was precisely correct in its view that "case law [prior to *Erickson* ] had already established the burden of proof" is open to question. Although, as the Appellate Division pointed out, we said in *Erickson* that we had previously declared that "malice in the context of a qualified privilege must be established by clear and convincing evidence," 117 *N.J.* at 565, 569 *A.*2d 793 (citing *Burke v. Deiner,* 97 *N.J.* 465, 481, 479 *A.*2d 393 (1984); *Maressa v. New Jersey*

*Monthly,* 89 *N.J.* 176, 197 n. 10, 445 *A.*2d 376 (1982)), neverthe-
less *Erickson* was the first case to apply the clear-and-convinc-
ing standard to private defamation plaintiffs. Our ruling in
that regard, though, was clearly foreshadowed by our unquali-
fied declaration in *Dairy Stores, supra,* that "the actual malice
standard should apply to non-media as well as media defen-
dants." 104 *N.J.* at 153, 516 *A.*2d 220. Therefore, the *Erick-
son* burden of proof can hardly be characterized as "new"—and
if the "clear and convincing" standard represents either estab-
lished law or a principle plainly hovering on the horizon, no
issue of retroactive application even exists.

Moreover, even if the *Erickson* rule be viewed as an exten-
sion of a recognized rule to a new area of the law, the *Burstein*
factors cited *supra* at 121–22, 623 *A.*2d at 240 work in favor of
retrospective application. The purpose of the qualified privi-
lege is, as we have indicated, to encourage the flow of accurate
information when required for the protection of certain impor-
tant interests. To the extent that that flow of information
would be inhibited by allowing claims of abuse of a qualified
privilege to succeed on the basis of a standard of proof less
than clear and convincing, the important public purpose of the
privilege is defeated.

Finally, we are satisfied that the remaining *Burstein* fac-
tors—reliance on the "old" rule and the effect on the adminis-
tration of justice—would not favor only prospective application
of *Erickson.* The role of those factors in this context is
inconsequential. We are therefore not persuaded that this case
presents any reason for departing from the well-established
rule of retrospective application of a new rule of law. So
important are the underlying policy considerations supporting
the qualified privilege that we reach our conclusion despite the
fact that the erroneous charge on the quantum of proof met
with defendant's approval. The incorrect jury charge was
clearly capable of producing an unjust result. See *Rule* 2:10–2.

## III

The judgment of the Appellate Division on plaintiff's remaining claims of error is affirmed. The judgment in favor of defendant is reversed and the cause remanded for trial in accordance with this opinion.

Affirmed in part, reversed in part, and cause remanded. Costs to abide the event.

*For affirmance in part; reversal in part and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK and STEIN—5.

*Opposed*—None.