Kim VAN OVERBEKE, Appellant,

v.

David R. YOUBERG d/b/a Miller & Youberg Medical Associations, P.C. n/k/a Sac Family Medical Associations, P.C., and Loring Hospital, Appellees.

No. 302/94–89.

Supreme Court of Iowa.

Nov. 22, 1995.

Rehearing Denied Dec. 15, 1995.

274

William R. King, Kris Holub Smith, and William D. Thomas of Davis, Brown, Koehn & Shors, P.C., Des Moines, for appellant.

Maurice B. Nieland of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, for appellee David R. Youberg.

Joseph L. Fitzgibbons of Fitzgibbons Brothers, Estherville, for appellee Miller & Youberg Medical Associates, P.C. n/k/a Sac Family Associations, P.C.

John M. French and Frederick T. Harris of Kennedy, Holland, DeLacy & Svoboda, Council Bluffs, for appellee Loring Hospital.

Considered by LARSON, P.J., and CARTER, NEUMAN, ANDREASEN, and TERNUS, JJ.

LARSON, Justice.

This is an appeal from a judgment for the defendants in a medical malpractice case. The plaintiff raises several substantive issues, but one of those issues is dispositive of the case: the plaintiff's failure to bring the action within six years after the alleged acts of negligence. Iowa Code § 614.1(9) (1991). The jury found that the plaintiff had not established her claim of fraudulent concealment so as to avoid the time bar of that section, and the trial court accordingly entered judgment for the defendants. We affirm.

## I. *The Jurisdiction Issue.*

■ We first address a procedural issue raised by the defendants. They contend that we lack jurisdiction of the appeal because the plaintiff's new trial motion, and her notice of appeal that followed, were untimely.

Iowa Rule of Civil Procedure 247 requires motions for new trial to be filed within ten days of the verdict "unless the court, for good cause shown and not ex parte, grants an additional time not to exceed thirty days." The jury verdict was returned on November 10, 1993. Because November 20 was a Saturday, the plaintiff had until Monday, November 22, to file her motion for new trial.

On November 19, the court orally granted the plaintiff an extension to November 23. While the written order was dated November 24, it is clear by its language that it was granted on November 19. Iowa Rule of Appellate Procedure 5(a) requires appeals to be taken within thirty days from the judgment "unless a motion for new trial ... is filed, and then within thirty days after the entry of the ruling on such motions...." The ruling on the plaintiff's motion for new trial was entered on December 13, 1993. Therefore, Van Overbeke had until January 12, 1994, to file her notice of appeal. She filed her notice on January 12, and we therefore have jurisdiction of her appeal.

## II. *The Facts.*

The plaintiff, Kim Van Overbeke was admitted to Loring Hospital for the Caesarean delivery of her first child in March 1981. Dr. Youberg was her attending physician. Prior to the hospitalization, Dr. Youberg had the couple's blood types determined. The plaintiff was RH negative, and her husband was RH positive. When this difference occurs, there is a ten to fifteen percent chance that the mother may become sensitized to the RH

positive blood, with sometimes serious consequences. To prevent sensitization, the drug RHoGAM should be administered and is said to be eighty-five percent effective.

In this case, the plaintiff did not receive the RHoGAM. The jury found the doctor (but not the hospital) negligent in failing to secure the proper laboratory tests and to assure that the plaintiff received the RHoGAM injection.

The parties' negligence, however, is no longer the issue. While the jury found negligence on the part of the doctor, it did not find that he had fraudulently concealed information so as to avoid the six-year time bar of section 614.1(9). The plaintiff won the battle but lost the war. This raises the next issue—the statute of limitations.

### III. *The Statute of Limitations.*

Iowa Code section 614.1(9) is a special statute of limitations for malpractice cases. It first provides a statutory version of a "discovery" rule: actions against health care providers must be brought "within two years after the date on which the claimant knew, or through the use of reasonable diligence, should have known ... of the injury or death for which damages are sought."

This section then incorporates this language of repose:

In no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.

Except for the foreign-object exception, there are no express exceptions to the six-year limitation of section 614.1(9). However, in *Koppes v. Pearson*, 384 N.W.2d 381 (Iowa 1986), we held that, if a defendant has fraudulently concealed information necessary to make a claim, section 614.1(9) will not bar the claim. In doing so, we reasoned that the legislature would not have inadvertently repealed the "venerable" fraudulent concealment exception that had long existed in our law. *Id.* at 387–88.

This view was not unanimous; three justices dissented on the ground that the legislature showed it knew how to provide an exception to the six-year bar by exempting cases involving foreign objects in the body, yet it did not provide an exception for fraudulent concealment. Six years maximum, the dissent argued, means six years in all cases not involving foreign objects. *Koppes,* 384 N.W.2d at 388–89 (Schultz, J., dissenting). Moreover, the dissent noted that the policy of the six-year bar of section 614.1(9) supported a narrow view as to any exceptions. It is said that the statute

was enacted as part of a comprehensive act as a response to "a critical situation" caused by the high cost and impending unavailability of medical malpractice insurance.

*Koppes,* 384 N.W.2d at 389 (quoting *Farnum v. G.D. Searle & Co.*, 339 N.W.2d 392, 395 (Iowa 1983), and 1975 Iowa Acts ch. 239, § 1). In interpreting section 614.1(9) and applying the principles of fraudulent concealment, we keep in mind these stated policy considerations.

Regarding the application of the doctrine of fraudulent concealment, the plaintiff contends that (1) the court failed to properly instruct the jury that information available to other health care personnel was imputable to the defendants and that the defendants need not have had actual knowledge of that information; (2) an affirmative act of concealment is not required—failure to disclose is sufficient; (3) there was insufficient evidence for the jury to find no fraudulent concealment; and (4) section 614.1(9) does not apply to a hospital.

We do not address the fourth ground. The jury found the hospital was not negligent, so application of the time bar under section 614.1(9) is moot.

A. *Is actual knowledge required?* The plaintiff complains that the jury should have been instructed that, for fraudulent concealment purposes, a defendant should be charged with knowledge of any facts (such as hospital records) that he should have known as well as those of which he had actual knowledge. (Here, the doctor testified that he was not aware of much of the information

in the hospital records dealing with the failure to perform the necessary blood tests.)

The plaintiff characterizes the doctor-patient relationship as a fiduciary one and argues that this "gives rise to a duty of disclosure on the part of the defendants to advise the plaintiff of all material facts which might affect her interests." Ironically, this is almost identical to the language of Instruction No. 30, which told the jury that

> in this case the Plaintiff's cause of action will be barred [under section 614.1(9) ] unless the Plaintiff has established that [the Defendants] fraudulently concealed from Kim Van Overbeke the fact that Kim Van Overbeke failed to receive RHoGAM on March 20, 1981.

> The Plaintiff has the burden of proving the fraudulent concealment by [the Defendants].

> Fraudulent concealment may be proven by an affirmative act of concealment *or by a failure by the Defendants to disclose material facts relating to Plaintiff's treatment.*

(Emphasis added.)

Instruction No. 30 did not require actual knowledge of the facts by the defendants; it required only that "material facts relating to plaintiff's treatment" be withheld. We therefore do not decide the question of whether an instruction requiring actual notice was required.

B. *Is an affirmative act of concealment required?* The plaintiff, again relying on a "fiduciary" relationship between patient and health care provider, argues that an affirmative act of concealment is not required; mere silence is enough.

It is doubtful that the plaintiff's objections to the instructions clearly noted this point. In any event, we do not believe this objection has merit. As noted, the instruction provided that fraudulent concealment could have been found for a failure to disclose as well as for an affirmative act.

■ To establish fraudulent concealment, the general rule is that a plaintiff must show that (1) the defendant did some affirmative act to conceal the cause of action, and

(2) the plaintiff exercised diligence to discover the cause of action. *Pride v. Peterson,* 173 N.W.2d 549, 555 (Iowa 1970). However, we have said that the close relationship between patients and physicians "gives rise to duties of disclosure which may obviate the need for a patient to prove an affirmative act." *Langner v. Simpson,* 533 N.W.2d 511, 523 (Iowa 1995) (quoting *Koppes,* 384 N.W.2d at 387). This distinction had been recognized under our case law even before the enactment of section 614.1(9). In *Schnebly v. Baker,* 217 N.W.2d 708, 721 (Iowa 1974), for example, we said that "when the physician fraudulently concealed the injury or its cause or, *knowing the facts as to the injury or cause,* fraudulently fails to disclose them, the period does not begin to run. . . ." (Emphasis added.) In *Pride,* we applied this rule in an attorney/client context. 173 N.W.2d at 555.

Despite this "special relationship," which calls for a reduced level of proof of fraudulent concealment in certain cases, the acts of concealment must nevertheless be independent of the alleged acts relied on to establish liability. As we held in *Cole v. Hartford Accident Indemnity Co.,* 242 Iowa 416, 46 N.W.2d 811 (1951), the alleged concealment was the basis of the original fraud charge, and we held it therefore could not be an independent basis for finding fraudulent concealment; to recognize the concept of fraudulent concealment in that case would effectively wipe out the statute of limitations on the fraud claim. *Id.* at 428–29, 46 N.W.2d at 818. There must also be a *temporal* separation of the acts of negligence and the acts of alleged concealment; the concealment must take place after the alleged acts of negligence occurred. *Woods v. Schmitt,* 439 N.W.2d 855, 862 (Iowa 1989); *see also Langner,* 533 N.W.2d at 522–23 (requiring acts independent of and in addition to wrongdoing itself for fraudulent concealment).

■ In the present case, the plaintiff has asserted various acts of diagnostic negligence, but the doctor's failure to disclose to the plaintiff that she needed the RHoGAM injection lies at the heart of her claim. Failure to disclose that need, as a ground of liability, cannot be the basis for fraudulent

concealment. If it could be, there would effectively be no statute of limitations for negligent failure to inform a patient. *Cf. Cole,* 242 Iowa at 428–29, 46 N.W.2d at 818 (fraud as basis of liability cannot also be basis for finding of fraudulent concealment).

■ C. *Sufficiency of the evidence.* The plaintiff contends that the evidence did not support the jury's evidentiary conclusions with respect to both her claims of negligence and her claim of fraudulent concealment. Because we find that the time bar of section 614.1(9) is dispositive, we address the sufficiency of the evidence only insofar as it applies to the plaintiff's claim of fraudulent concealment.

Any claim of fraudulent concealment based on a failure to disclose (as opposed to an affirmative act of concealment) was resolved in the foregoing discussion. As to any affirmative act of concealment, we believe there was sufficient evidence upon which the jury rejected the plaintiff's claim of concealment. Dr. Youberg, the nurses, and hospital employees uniformly testified that the information was not concealed.

In summary, we find no error in the trial court's instructions or the failure of the trial court to grant a new trial on the basis of the alleged insufficiency of the evidence. Accordingly, we affirm.

**AFFIRMED.**